UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JHON M., : <br> : <br>    *Plaintiff*, : <br> : <br>        v. : <br> : <br> KILOLO KIJAKAZI, [1] : <br> Acting Commissioner of Social Security, : <br> : <br>    *Defendant*. : | No. 3:20-cv-01820 (SDV) |

## RULING ON PENDING MOTIONS

Plaintiff Jhon M. (hereinafter, the "plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g) from the decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits pursuant to Title II of the Social Security Act, and supplemental security income pursuant to Title XVI. Pending before the Court are the parties' cross-motions to reverse or affirm the Commissioner's decision, respectively. For the reasons set forth below, the Court **DENIES** plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 28) and **GRANTS** the Commissioner's Motion to Affirm (Doc. No. 32).

## I.     STANDARD OF REVIEW

To be eligible for disability insurance benefits under Title II of the Social Security Act, an adult claimant must establish the onset of disability during the period in which he or she was insured for disability benefits based on quarters of qualifying work. 42 U.S.C. § 423; *see also*

---

[1] Since the filing of this case, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration Commissioner of the Social Security Administration. She is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

*Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  Alternatively, Title XVI provides for supplemental security income benefits to claimants who are indigent and disabled without reference to prior work dates.  *See Bowen v. City of New York*, 476 U.S. 467, 470 (1986) (citing 42 U.S.C. § 1381 *et seq.*).

      The term "disability" is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant will meet this definition if his or her impairments are of such severity that the claimant can neither perform previous work nor "engage in any other kind of substantial gainful work which exists in the national economy" considering his or her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A).

      The Commissioner follows a five-step sequential evaluation process for assessing disability claims as provided in 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Second, if not, the Commissioner considers whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  Third, if the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings").  If so, and

if it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience. Fourth, if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity (hereinafter, "RFC") to perform his or her past work. Lastly, if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

A claimant dissatisfied with the initial determination may request a hearing before an administrative law judge ("ALJ"), *see* 20 C.F.R. §§ 404.929, 416.1429, and then may seek review of the ALJ's decision from the Appeals Council, *see* 20 C.F.R. §§ 404.967, 416.1467. If the Appeals Council declines review or affirms the ALJ's opinion, the claimant may appeal to the United States District Court. 42 U.S.C § 405(g). On appeal, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

"A district court reviewing a final . . . decision pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). "The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  It must be "more than a mere scintilla or touch of proof here and there in the record." *Id.*  If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).  However, the Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## II.   BACKGROUND

### A.  Procedural History

Prior to the application under review in this case, plaintiff was awarded benefits in 2011 based on the agency's determination that his mental impairments met the criteria of Listing 12.04 as of the onset date of March 15, 2010.  R. 198.  However, on periodic review in 2014, the agency terminated benefits after concluding that plaintiff's condition had improved. *Id.*  At his request, a face-to-face reconsideration hearing was scheduled for July 27, 2015, but he did not appear.  R. 199-200.  In August 2015, based on the paper record, the hearing officer agreed on reconsideration that plaintiff was no longer disabled.  R. 196-204.  Plaintiff did not seek review

of the 2015 reconsideration decision, nor did he file any request to reopen the 2014/2015 determination.

On December 19, 2017, plaintiff filed new, concurrent applications for Title II disability insurance benefits and Title XVI supplemental security income alleging an onset date of March 15, 2010. R. 121, 134. The claim was denied at the initial and reconsideration levels, and plaintiff requested a hearing. R. 194-195, 220, 224.

On October 3, 2019, ALJ John Noel conducted a hearing at which plaintiff and a vocational expert testified. Hrg. Tr., 65-120. On December 19, 2019, the ALJ issued a written decision denying plaintiff's claim. R. 26-40. The Appeals Council denied plaintiff's request for review. R. 1. On December 7, 2020, plaintiff filed this administrative appeal. Doc. No. 1.

### B. Factual History

At the 2019 hearing, plaintiff identified his impairments primarily as mental illness, joint dysfunction of the wrist and knee, and epilepsy. R. 74, 80, 98. He testified that he first experienced symptoms of mental impairment as a child in Peru but did not begin treatment until February 2010. R. 103. He mentioned having bipolar disorder and post-traumatic stress disorder ("PTSD") caused by incidents of sexual abuse, including in childhood and during a recent incarceration, and he described symptoms of depression, anxiety, and hearing voices, including most recently when he was in prison and one other time in the six months prior to the hearing. R. 103-105. He takes pills for sleeping, anxiety, and depression, which make him groggy in the morning. R. 82-83

Regarding his physical conditions, plaintiff testified that he suffered a right wrist injury when attacked by other inmates. R. 77-78. Plaintiff described the pain as "uncomfortable," and that the pain has endured for two years. R. 80. Plaintiff testified that he is unable to lift even a

gallon of milk with his right hand. R. 75. Plaintiff also testified that he cannot walk long distances because of knee pain. R. 81. He takes pills for his wrist and knee. R. 80. Plaintiff also has a history of epilepsy and testified that his first seizure occurred when he was nine years old. R. 98.

The record includes 1,941 pages of medical records. R. 447-2634. Plaintiff was treated and given pain management for his wrist on numerous occasions in 2018 (R. 793-816, 847-858, 926-928, 1147-1165, 1181-1204, 1888-1894), and a May 2018 MRI of the right wrist revealed a "nearly healed" fracture and possible chronic ulnar abutment (R. 859-860). An August 2019 EMG nerve conduction study was "abnormal" with mild radiculopathy on the right side but no neuropathy. R. 2330-2333. Plaintiff reported knee pain while incarcerated in September 2015 and July 2017 (R. 641, 647), an x-ray in August 2017 was "normal" (R. 671), but he reported knee pain again in December 2017 after his release (R. 705). He saw a psychiatrist, took medications, and attended group therapy for his depression, bipolar disorder, and anxiety regularly from 2014 to 2019, and experienced some occasional suicidal ideation. R. 468-624, 686-699, 760-775, 830-854, 873, 879, 921, 1595-1697, 1766-1887. Plaintiff was treated for epilepsy and nocturnal seizures, including obtaining an EEG in June 2018 and an MRI scan in August 2018, which were normal. R. 826-832, 910-920, 1751-1762, 2184-2190. He had no seizures while medication-compliant between May and August 2019, but had another in October 2019, at which time he reported that seizures occur when he is not taking medication. R. 2334-2342.

### C. The ALJ's Decision

In a written decision dated April 14, 2022, the ALJ applied the five-step sequential evaluation to determine whether plaintiff was disabled as pursuant to the Social Security Act. At

Step 1, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date. R. 29. At Step 2, the ALJ found that plaintiff has the following severe impairments: epilepsy, joint dysfunction at the wrist, bipolar depressive order, and anxiety, and found that plaintiff's knee pain was non-severe. *Id.* At Step 3, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 30-32. Next, the ALJ found that plaintiff has the following residual functional capacity:

> To perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can never climb ladders, ropes, and scaffolds or have exposure to unprotected heights or moving mechanical parts. The claimant can perform simple, routine tasks and use judgment limited to simple, work- related decisions as well as deal with routine changes in the work setting.

R. 32-37. The ALJ explained: "Specifically, the undersigned has limited the claimant to medium work with seizure precautions to address the claimant's wrist dysfunction and epilepsy and limited him to simple tasks and decisions in a workplace with routine changes to account for his mental impairments." R. 37.

At Step 4, the ALJ determined that plaintiff is unable to perform any past relevant work as a rural mail carrier (medium exertion level) or as a commercial/institutional cleaner (heavy exertion level, but "performed medium").[2] R. 38. At Step 5, the ALJ found, based on the testimony of a vocational expert, that plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy, taking into account the additional limitations identified by the ALJ that impeded plaintiff's ability to perform work at the medium level of exertion. R. 38-39. The vocational expert testified that given all the relevant factors,

---

[2] The Court interprets the ALJ's reference to "performed medium" to mean that plaintiff performed this prior work at a medium exertion level.

plaintiff would be able to perform the requirements of occupations such as a kitchen helper or a food service worker. *Id.* Accordingly, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from March 15, 2010, through the date of this decision." R. 39.

## III. DISCUSSION

Because plaintiff is self-represented in this appeal, the Court construes his motion liberally and reads his submission to raise the strongest arguments it suggests. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

### A. Scope of review

Plaintiff's motion raises a threshold legal question regarding the scope of this appeal. Plaintiff states that he was awarded disability benefits in 2011 and received notice in 2014 that they were being terminated, but he argues that he was unable to attend the reconsideration hearing and effectively challenge the termination decision because he was arrested and incarcerated. Doc. No. 28, at 1. For the following reasons, the Court concludes that the 2014 decision is not subject to review on this appeal.

The record confirms that, in 2011, plaintiff was found to have a disabling mental impairment with an onset date of March 15, 2010. R. 198. Subsequently, during a periodic review in 2014, the agency determined that his condition had improved and terminated benefits. *Id.* At plaintiff's request, a face-to-face reconsideration hearing was scheduled in 2015, but he did not appear. R. 199-200. The hearing officer concluded in August 2015, based on the paper record only, that plaintiff was no longer disabled as of July 29, 2014. R. 196-204. Plaintiff now argues in his brief that he was prevented from appearing and pursuing his challenge due to being

arrested and incarcerated in Georgia. Doc. No. 28, at 1. The record confirms that he was incarcerated in Georgia from September 2014 through December 2017. R. 627-634.

To the extent that plaintiff is seeking formal review and reversal of the 2014 termination of benefits or the 2015 reconsideration of that decision, those determinations were not within the scope of the ALJ's review and are not reviewable on this appeal. The agency's decision on reconsideration in 2015 was binding because plaintiff did not seek timely review or an extension of time to request review. *See* 20 C.F.R. §§ 404.921, 416.1421 (reconsideration determination is binding unless timely appealed or revised); 20 C.F.R. §§ 404.968(b), 416.1468(b) (procedure for seeking extension of time to request review); *McIntosh v. Comm'r of Soc. Sec.*, No. 19-cv-5362 (MKB), 2021 WL 826252, at *3 (E.D.N.Y. Mar. 4, 2021) (Appeals Council may extend time to appeal for good cause shown). Nor did plaintiff request that the decision be reopened. *See* 20 CFR § 404.988 (Title II determination may be reopened within one year for any reason or within four years for good cause). Instead, plaintiff filed a new application for benefits in December 2017. Plaintiff did not challenge the prior award and termination of benefits in his application materials or at the 2019 Hearing, and the prior award of benefits was mentioned only in passing in the hearing transcript and the ALJ's 2019 decision. R. 26, 69. Consequently, the merit of the 2014/2015 decisions to terminate benefits was not part of the ALJ's 2019 decision, and is not before this Court on appeal.

The Court is cognizant that, if the termination of benefits were within the scope of the ALJ's review, the ALJ would have been required to conduct an expanded analysis to account for the prior finding of disability. *See De Leon v. Sec'y of Health & Hum. Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("[T]he [Commissioner] may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the

9

point that he or she is no longer disabled, or that the initial finding of disability was erroneous."). However, plaintiff's failure to take the necessary steps to obtain such a review from the Commissioner – either by requesting an extension of time to appeal from the termination or by requesting that the decision be reopened – appears to have had minimal, if any, practical impact in the present circumstances. The ALJ's decision did not revise the prior award of benefits for the period from March 2010 through July 2014, and because the ALJ deemed plaintiff's onset date to be March 15, 2010 and his date last insured to be July 30, 2017, *see* R. 29, the July 2014 termination of benefits did not have any preclusive impact on the potential availability of Title II benefits under the present application. [3] Effectively, the ALJ's decision picks up where benefits ceased, and plaintiff is obtaining judicial review of the ALJ's determination as to that subsequent period. For all these reasons, the Court will not address the merits of plaintiff's contention that his incarceration prevented him from challenging the benefits termination in 2015.

### B. Alleged factual errors

The balance of plaintiff's five-page brief focuses on factual issues relating to four alleged impairments: gastritis, left knee pain, right wrist pain, and mental health. Construing the brief to raise the strongest arguments it suggests, plaintiff argues that the ALJ erred in not finding gastritis and left knee pain to be severe impairments at Step 2. He also argues that the ALJ made factual errors relating to the origins and impacts of his right wrist injury and mental health conditions, which the Court construes as a challenge to the ALJ's RFC determination.

The Court reviews the ALJ's factual findings under the substantial evidence rule. *See* 42 U.S.C. § 405(g). If the Commissioner's decision is supported by substantial evidence, that

---

[3] The initial agency reviewer stated a date last insured ("DLI") of September 30, 2012. R. 150, 194. It is unclear why the two DLIs are inconsistent.

decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982); *see also Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means that once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'").

### 1. Step 2 conclusions

In general terms, at Step 2, the ALJ performs a screening function by evaluating whether a claimant has any medically determinable impairment or combination of impairments that is severe – if not, the analysis ends, and the claim is denied. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (standard for a finding of severity at Step 2 "is *de minimis* and is intended only to screen out the very weakest cases"). A "severe" impairment is one that "significantly limits" a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* Soc. Sec. Rul. 85-28, 1985 WL 56856 (S.S.A. 1985) (claim may be denied at Step 2 only if combination of impairments does not have "more than a minimal effect" on ability to perform basic work activities).

At Step 2 in this case, the ALJ found that plaintiff had the following severe impairments: epilepsy, joint dysfunction at the wrist, bipolar depressive disorder, and anxiety. R. 29. Plaintiff contends that the ALJ erred in not addressing his gastritis, and in finding that his left knee pain was not a severe impairment.

### a. Gastritis

Plaintiff's contention that the ALJ was required to discuss his gastritis is without merit. The brief is the first instance in which plaintiff cites gastritis as a material factor in his alleged disability. He did not mention any gastric ailment in in his application phone interview on January 12, 2018, R. 325, in the prehearing statement signed by his attorney, R. 413-436, or in

his hearing testimony, R. 64-120. There are passing references to gastroesophageal reflux disease ("GERD") in the medical record but no substantive evaluation of any such alleged condition. For example, while incarcerated, plaintiff complained of reflux and GERD in September 2015, November 2016, and apparently was taking Pepcid in July 2017. R. 641, 645, 647. In a "Recent Medical Treatment" form dated December 3, 2018, plaintiff noted that he was taking prescription omeprazole to treat GERD. R. 397-398. Medical records from Hartford Healthcare from 2018 and 2019 note a "past medical history" of GERD but do not include any examination or evaluation for that condition. *See*, *e.g.*, R. 862, 867, 871, 874, 910, 915, 926, 1737. Because there is no suggestion in the medical record that plaintiff's GERD caused any functional limitations, the ALJ was not required to explicitly discuss it. *Soler v. Colvin*, No. 3:13-cv-1659 (SRU)(WIG), 2015 WL 4999907, at *11 (D. Conn. Mar. 3, 2015) ("When there is no evidence a particular impairment results in a functional limitation, the ALJ need not discuss it explicitly."), *report and recommendation adopted*, 2015 WL 4999790 (D. Conn. Aug. 21, 2015).

### b. Knee pain

As for knee pain, substantial evidence supports the ALJ's determination that it was non-severe. Although plaintiff asserts in his brief that he uses "a cane and also a walker with the roller wheels," Doc. No. 28, at 5, there is no mention of assistive devices in the medical record or plaintiff's hearing testimony. *See* Hrg. Tr., 65-113. The ALJ did consider an August 2017 x-ray indicating a "normal" left knee, R. 671, a March 2018 report that plaintiff's knee pain improved with Meloxicam use, R. 776, an October 2018 finding of crepitus on examination, R. 1639, a follow-up October 2018 x-ray indicating that "bones and soft tissue are normal," R. 1582, and a November 2018 report that the pain occurred intermittently, was stable, and was relieved by a brace, R. 2012. Accordingly, substantial evidence supports the ALJ's conclusion that the knee

pain did not "significantly limit" plaintiff's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920 (c).

Moreover, the ALJ went on to consider plaintiff's knee pain in the RFC determination, and concluded that accommodation should be made, namely, that plaintiff should be limited to medium-duty work. R. 33. Thus, any error regarding the ALJ's conclusion that the knee pain was non-severe would be harmless. [4] *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (harmless error where ALJ proceeded past Step 2 and "specifically considered" the non-severe impairments in subsequent steps); *cf. Hernandez v. Berryhill*, No. 3:17-CV-368 (SRU), 2018 WL 1532609, at *12 (D. Conn. Mar. 29, 2018) (error was not harmless where ALJ did not consider non-severe impairment after Step 2 "in any meaningful way").

Based on the foregoing, the Court finds no error at Step 2.

**2. Factual support for RFC determination**

**a. ALJ's RFC analysis was supported by substantial evidence**

Plaintiff's remaining contention is that the Court misinterpreted certain evidence when determining his residual functional capacity. The ALJ's analysis of plaintiff's RFC spans five pages of the written decision and is supported by extensive pinpoint citations to the medical record. R. 32-37. The analysis begins by comparing plaintiff's descriptions of his limitations in his application with medical records from 2011 to 2019 documenting his self-reporting and treater's conclusions upon examination. R. 33-35.

---

[4] Plaintiff does not claim that the knee pain meets the criteria of a listed impairment that would compel a finding of disability at Step 3, nor do the limitations discussed in the medical record satisfy the criteria of Listing 1.18 (Abnormality of a major joint(s) in any extremity), which requires, *inter alia*, anatomical abnormality noted on physical examination or imaging, and a documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheelchair. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

13

Addressing plaintiff's epilepsy and accompanying seizures, the ALJ found that it was well-controlled by medication but, as a further precaution, restricted plaintiff from working around ladders, ropes, scaffolds, unprotected heights, and moving mechanical parts. R. 33. Regarding plaintiff's wrist dysfunction, the ALJ cited evidence of improvement, with a self-report in the month prior to the hearing that plaintiff no longer used a wrist splint, had achieved six months of relief via steroid objection, and had a normal range of motion. *Id.* Nonetheless, the ALJ limited plaintiff to work at the medium exertional level to account for his history of wrist dysfunction, occasional obesity, and complaints of knee pain. *Id.* As a further precaution concerning the epilepsy, wrist dysfunction, obesity, and knee pain, the ALJ restricted plaintiff from working around hazards. R. 35.

The ALJ also devoted significant attention to plaintiff's history of mental impairments, including the bipolar disorder and anxiety that the ALJ found to be severe at Step 2. R. 34-37. In addition to compiling longitudinal evidence from the treatment records, the ALJ considered the various opinions of the psychiatrist, psychologist, doctors, nurse practitioner, and social worker that had examined plaintiff between 2011 and 2018, and assigned weight based on their consistency with the treatment record as a whole. R. 36-37. The ALJ also considered plaintiff's own statements concerning his activities to medical providers, in his application paperwork, and in his hearing testimony. R. 34-35. Of particular relevance to the present appeal, the ALJ evaluated plaintiff's ability to respond appropriately to supervision or interact with supervisors, coworkers, or members of the public as follows:

> The claimant can shop in stores, attend <u>church</u> frequently, play soccer and <u>volleyball</u>, go to <u>barber school</u>, and socialize with family over the telephone, all of which require social skills and interaction (7E, 6F/10, 20F/2). The claimant was described as pleasant in his interaction (6F/45, 16F/3). He was cooperative with treatment providers (19F/14, 20F/99, 23F/8, 25F/10, 31F/114, 33F/2, 40F/9). He was able to maintain average eye contact (20F/99, 24F/62, 29F/13, 34F/33). He

14

> was described as polite, cooperative, and engaging and a joy to have in group therapy (24F/11). As such, the claimant is not limited in his ability to respond appropriately to supervision or interact with supervisors, coworkers, or members of the public.

R. 34 (emphasis added). That discussion dovetailed with the ALJ's reliance on the same social activities at Step 3 to support his conclusion that plaintiff had no more than a mild limitation in interacting with others, and no more than a moderate limitation in concentrating, persisting, or maintaining pace. R. 31. The ALJ's bottom line conclusion was that plaintiff retains the memory, concentration, and judgement to perform simple, routine tasks and make simple, work-related decisions, and that a more restrictive mental functional capacity would not be supported by the evidence. R. 35.

The ALJ's detailed discussion with pinpoint citations is consistent with the medical record, and the Court finds that substantial evidence supports the ALJ's findings as to plaintiff's physical and mental RFC.

### b. Facts disputed by plaintiff

In his brief, plaintiff appears to contend that the ALJ misinterpreted several facts that affected the RFC determination. However, not only did the ALJ not make any factual mistake, but also the alleged mistakes, even if true, would not alter the Court's conclusion that the RFC determination was supported by substantial evidence.

### i. Volleyball

First, plaintiff contends that the ALJ overlooked the fact that plaintiff stopped playing volleyball after he hurt his wrist, and he seems to imply that this alleged misunderstanding affected the ALJ's evaluation of his wrist function. Doc. No. 28, at 3; *see also* Hrg. Tr., R. 79, 97 (plaintiff testified that he played volleyball twice a week in prison until he hurt his wrist). However, the ALJ did not cite the ability to play volleyball as a factor in evaluating plaintiff's

physical ability. Instead, the ALJ cited volleyball, along with other such social activities, as evidence of plaintiff's mental function. Specifically, at Step 3 the ALJ cited volleyball and other social activities to support his conclusion that plaintiff had no more than a mild limitation in interacting with others. R. 31. Likewise, in the RFC determination, the ALJ cited the same social activities to support his conclusion that plaintiff's mental impairments did not limit his ability to respond appropriately to supervision or interact with supervisors, coworkers, or members of the public. R. 34. Even assuming that the ALJ overlooked evidence that plaintiff was no longer playing volleyball, the fact that plaintiff played volleyball twice a week prior to October 2017 was relevant to a determination of his social and cognitive abilities since March 2010, and the ALJ properly considered it for that purpose.

### ii. Barber school

Plaintiff also asserts that the ALJ erroneously found that he was attending barber school in Springfield, Massachusetts. Doc. No. 28, at 3. However, the ALJ did not make any such finding. In response to questions at the hearing, plaintiff clarified that the barber school was not in Springfield but in Hartford, Connecticut. Hrg. Tr., R. 96, 99. That fact was immaterial to the ALJ's conclusions and, indeed, was not cited in the written decision. Furthermore, to the extent that plaintiff is arguing that his attendance at barber school was not probative of the extent of his wrist dysfunction, *see* R. 93-97 (plaintiff testified that he never actually used his hands during barber classes), the ALJ apparently agreed. Just as described above with reference to volleyball, plaintiff's attendance at barber school is cited in the decision solely as an example of plaintiff's social and cognitive abilities, and not as evidence of plaintiff's wrist function or dysfunction. *See* Decision, R. 31, 34, 36. Thus, even assuming the ALJ misapprehended the location or physical demands of the barber classes, those facts had no impact on the ALJ's decision.

### iii. History of sexual abuse

Plaintiff also complains that the ALJ failed to acknowledge his history of sexual abuse, including while he was in prison. Doc. No. 28. Plaintiff is correct that the ALJ did not mention the cause of plaintiff's mental impairments in the decision, although there was hearing testimony regarding sexual abuse in childhood and during incarceration. *See* Hrg. Tr., R. 87-88, 103. However, that did not produce any deficiency in the ALJ's assessment of the functional limitations resulting from plaintiff's mental impairments. Under the regulations, the ALJ was required to "consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. §§ 404.1520a, 416.920a. Although the etiology of an impairment could be relevant in certain circumstances – *see*, *e.g.*, *Abboud v. Comm'r of Soc. Sec.*, No. 19-cv-5271 (LDH), 2021 WL 1062035, at *3 (E.D.N.Y. Mar. 19, 2021) (remanding where ALJ failed to determine whether there was a causative connection between claimant's alleged depression and her commission of felony bank fraud, which would disqualify the impairment from consideration pursuant to statute); *Pochepan v. Comm'r of Soc. Sec.*, No. 18-cv-857 (FPG), 2019 WL 5682831, at *3 (W.D.N.Y. Nov. 1, 2019) (ALJ correctly did not separately assess the severity of traumatic brain injury at Step 2 because it was the cause of claimant's mental impairments, and not an impairment in and of itself) – it was not relevant to the ALJ's determination of the plaintiff's functional limitations in this case. Here, the cause of the mental impairments was not material to the ALJ's evaluation of their effects, and that evaluation was supported by substantial evidence.

### 3. Allegation of ALJ bias

Lastly, plaintiff contends that the ALJ's mention of church attendance amounted to discrimination on the basis of religion. Doc. No. 28, at 4; *see also* Decision, R. 31, 34 (citing frequent church attendance as evidence of plaintiff's social functioning). Plaintiff also states: "I don't want to feel discriminated since I always was, either because of my sexual orientation or for decision that have been considered to me up to today." *Id.*, at 5. To the extent that plaintiff is alleging that the ALJ was biased, the allegation is not supported by the record. The Court must start from the presumption that the ALJ is unbiased, and "[t]his presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). To prove bias, the plaintiff must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)). Simply put, the Court does not find any indication of ALJ bias in the record in this case, either with respect to plaintiff's religious practice, sexual orientation, or any other characteristic.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's Motion to Reverse the Decision of the Commissioner is **DENIED**, and the Commissioner's Motion to Affirm is **GRANTED**.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgement of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgement. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 26th day of September, at Bridgeport, Connecticut.

>*/s/ S. Dave Vatti*
>S. DAVE VATTI
>United States Magistrate Judge